# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK McGUIRE, | 1:07-CV-00086 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KATHY MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Alameda, following his conviction by jury trial on March 19, 1982, of second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

Petitioner's minimum eligible parole date was January 22, 1990. See Answer, Exhibit 3 at

1

1. On September 21, 2004, Petitioner's ninth subsequent parole suitability hearing was held before the California Board of Prison Terms (hereinafter "Board"). See Answer, Exhibit 3. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id. at 68.

Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of habeas corpus in the Alameda County Superior Court, which was denied on January 7, 2005, in a reasoned opinion. See Answer, Exhibit 4. He then filed a habeas petition in the California Court of Appeal, First Appellate District, on September 29, 2005. See Answer, Exhibit 5. The petition was denied without comment or citation to authority on October 21, 2005. See Answer, Exhibit 6. Petitioner then filed a habeas petition in the California Supreme Court on November 17, 2005. See Answer, Exhibit 7. On August 23, 2006, the petition was denied with citation to In re Dannenberg, 34 Cal.4th 1061 (2005), and In re Rosenkrantz, 29 Cal.4th 616 (2002). See Answer, Exhibit 8.

Petitioner filed the instant petition for writ of habeas corpus in the Northern District of California of the United States District Court. The petition was transferred to the Eastern District and received in this Court on January 17, 2007. The petition challenges the 2004 decision of the Board denying parole. Petitioner contends the Board's decision finding Petitioner posed an unreasonable risk of danger to society was not supported by the evidence. He argues the Board's continued use of the immutable facts of the offense violates due process. He claims the two-year denial was arbitrary and capricious. He also complains the denial of parole has caused his sentence to be disproportional compared to other life term inmates.

On June 11, 2007, Respondent filed an answer to the petition. Respondent contends the petition is untimely and without merit. Petitioner filed a traverse on July 13, 2007.

## FACTUAL BACKGROUND[1]

On July 7, 1981, a little before 9:00 p.m., Petitioner beat his infant daughter, Tory McGuire, with his hands and fists at the family residence in Hayward, California. When the

---

[1] The information is taken from 2004 parole suitability hearing. See Answer, Exhibit 3.

2

neighbor and his wife saw the condition of the baby, they suggested that an ambulance be called. Petitioner rejected the suggestion. Instead, he and his wife, Daisy McGuire, drove the child to Kaiser Hospital in Hayward. Upon arrival at 9:07 p.m., Petitioner took the baby to the emergency room screening nurse stating he thought the child was dying. The nurse observed the baby to be cyanotic, i.e., bluish, and she immediately took the baby to the emergency treatment room. The physicians noted massive bruising over the baby's chest and abdomen. At about 9:20, the screening nurse asked Petitioner how the child had been bruised and was informed that she had fallen off the couch that morning. The baby did not respond to the efforts of the medical staff and was pronounced dead at 9:44 p.m.

Later that evening, an officer from the Hayward Police Department arrived at the hospital and asked Petitioner about the source of the bruises and the baby's condition. Petitioner asserted that he was alerted by a sudden outcry from the baby and emerged from the bathroom to find the child on the floor beside the couch, having apparently fallen from the couch, bounced off a nearby walker, and landed on the carpeted floor. Petitioner and his wife were asked to go to the Hayward Police Department for the purpose of answering questions about the condition of the child. They agreed, and each was questioned by the detective about what had and had not occurred. Each denied striking or otherwise abusing the victim. Petitioner stated that his wife was a good and loving mother. She however was somewhat more equivocal when asked if Petitioner could have beaten the child.

After the police station interviews that night, Petitioner and his wife were informed the child had died and they were taken to their residence by the police. They consented to allowing the police to search, measure, and photograph the apartment interior. During that process, one officer told Petitioner the fall from the couch such as he had described simply did not account for the massive bruising suffered by the victim. Petitioner responded by stating that he had been upstairs going to the bathroom at the time and surmised that a group of unknown "Mexicans" may have entered the apartment, beaten the child, and departed upon his awareness. Petitioner stated there had been a lot of trouble in the neighborhood due to "lowriders." The officer and Petitioner then examined the interior of the apartment and ascertained that nothing was disturbed

3

or missing.

On July 8, 1981, Dr. Paul W. Herrmann performed a post-mortem examination of the remains of the victim. He documented at least 17 bruises on her chest and at least another 29 on her abdomen. Some of the bruises appeared to be coalescing, so there may have been more to each area. The internal examination disclosed the following fresh injuries: (1) The liver was transected, i.e., cut in half, and the side of the transecting lacerations was pulverized; (2) The pancreas was likewise transected and pulverized; (3) The bottom of the right lung was contused; (4) The large vein from the lower body which returns blood to the heart, the interior vena cava, was contused one inch from its junction with the heart; and (5) Numerous lacerations and contusions of lesser significance on other components of the abdominal viscera.

Older injuries were also observed: (1) A healing bruise to the baby's left flank with no underlying structural trauma, which was several days old; (2) Multiple lacerations of the little girl's anus, which were six weeks to two months old and involved not merely the anal mucosa, but extended through the muscular tissue surrounding the anus - the lacerations had a stellate configuration, i.e., star-shaped, and the anus itself was misshapen to an oblong as opposed to a normal circular shape; (3) Seven healing rib fractures aged six to eight weeks - these fractures were discovered at X-ray and were situated bilaterally, three on one side, four on the other, and on the sides of the rib cage rather than adjacent to either the sternum or the spine.

Doctors Herrmann and Levine were of the opinion that: (1) The little girl had been beaten to death; (2) The little girl was a victim of the Battered Child Syndrome; (3) The fresh injuries were inconsistent with having fallen from a height of sixteen inches to a floor with or without the intermediate impact with a baby walker - in fact, Herrmann asserted that a fall from sixteen *feet* would not have resulted in such injuries; (4) The anal lacerations were probably not caused by the passage of a hard stool. Herrmann declined to dogmatically exclude a hard stool as a remote possibility, but added that he had never seen such anal trauma attributable to such a cause in his 20 years of practice. In Herrmann's opinion, the lacerated anus resulted from the insertion of an object which was larger than the elastic limits of the anus and its musculature or alternatively resulted from the insertion of an object which would be accommodated by the anus which object

was then spread apart beyond the elasticity of the anal opening. The rib fractures were extraordinary in a child so young as the ribs in such an infant are not hardened and are quite pliable and such injuries were the probable result of intentional as opposed to accidental trauma. Dr. Herrmann opined the little girl would: (1) either scream in extreme pain upon the receipt of the fresh injuries and pass out shortly thereafter and die within five to thirty minutes; or (2) be rendered unconscious immediately and then expire as above. In no event would a child exhibit normal seven-month-old behavior after the receipt of the injuries in question.

## DISCUSSION

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

1    Petitioner has the burden of establishing that the decision of the state court is contrary to
2 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.
3 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the
4 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a
5 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th
6 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).
7    AEDPA requires that we give considerable deference to state court decisions. The state
8 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's
9 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,
10 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).
11 II.   Review of Petition
12    A parole release determination is not subject to all the due process protections of an
13 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see
14 also Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 12 (1979)
15 (explaining that due process is flexible and calls for procedural protections that particular
16 situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,
17 the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,
18 even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of
19 Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is
20 guaranteed the following process: 1) the inmate must receive advance written notice of a hearing,
21 Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard,"
22 Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be told why
23 "he falls short of qualifying for parole," Id.
24    "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation
25 of *good time* does not comport with 'the minimum requirements of procedural due process,'
26 unless the findings of the prison disciplinary board are supported by *some evidence* in the
27 record.'  472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."
28 Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (emphasis added).

7

The Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846, 851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Hayward, 512 F.3d at 542, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review the record. In reviewing the record and determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

California law provides that after an inmate has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it has set forth in the California Code of Regulations.

To determine whether 'some evidence' supports the state court decision, the test is not whether some evidence supports the reasons cited for denying parole, "but whether some evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 512 F.3d at 543, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

In denying parole in this case, the Board provided several reasons for its decision: 1) The nature and gravity of the commitment offense; 2) Lack of participation in self-help programs; 3) Recent conduct during incarceration; 4) Opposition by the Alameda County District Attorney's

Office and Hayward Police Department; and 5) psychological evaluations. See Answer, Exhibit 3 at 63-65. Petitioner disputes this and argues that there is no evidence supporting the finding that he currently poses an unreasonable risk of danger to society if released. Review of the Board's decision reveals that the state court decision approving the Board's determination of unsuitability was not unreasonable.

The primary factor in the Board's determination was the nature and severity of the commitment offense itself. The Board determined that the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2402(c)[2]. In support of its determination, the Board made a positive finding as to the factor set forth in § 2402(c)(1)(D), that the offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering. See Answer, Exhibit 3 at 63-64. In support of this finding, the Board noted that the victim was a defenseless six-month-old baby who was repeatedly and severely beaten over a period of months. Id. at 64. The baby had healing wounds of broken ribs and an injured rectum. Ultimately, the baby died as a result of a tremendous beating administered by Petitioner which pulverized the baby's liver and pancreas. The Board also determined that the victim had been abused pursuant to § 2402(c)(1)(C). Id. at 64. This finding is well-supported by the nature of the injuries sustained by the victim. Finally, the Board found that the motive for the crime was inexplicable or very trivial pursuant to § 2402(c)(1)(E). Id. at 64. The Board noted that the only reasons offered for the beatings were stress and the crying of the child, both clearly trivial reasons. Id. In light of the above, the Board reasonably found the offense was carried out in an especially atrocious and heinous manner under 15 C.C.R. § 2402(c).

---

[2]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
   (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
   (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
   (C) The victim was abused, defiled or mutilated during or after the offense.
   (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
   (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

In addition to the factors of the crime itself, the Board also determined that Petitioner had failed to participate sufficiently in self-help programs. Id. at 64. Petitioner conceded at the hearing that he had ceased participating in the Alcoholics Anonymous and Narcotics Anonymous programs, despite recommendations by the previous panel to do so. Id. at 51. He also admitted he had not participated in any self-help programs since the last parole hearing. Id. at 40. Therefore, the Board stated a "longer period of incarceration is required." Id. at 67. It was determined that Petitioner needed "continued participation in self-help not only to further delve into the causative factors for his participation in this life crime but to develop an appropriate level of responsibility." Id. The Board found that Petitioner had not taken full responsibility, has "danced around the issue for years," and "has placed blame on various other participants including the mother of the child." Id. at 67-68. The Board stated that Petitioner continues to pose an unreasonable risk of danger to others until further progress is made. Id. at 68. Pursuant to 15 C.C.R. § 2402(b), the Board is charged with considering "[a]ll relevant, reliable information available" in determining Petitioner's suitability for parole. In making this determination, the Board must consider, *inter alia*, Petitioner's "past and present attitude toward the crime" and his "past and present mental state." Id. Therefore, the Board properly considered Petitioner's lack of self-help programming and his attitude regarding the commitment offense. In light of these findings, the Board's finding that Petitioner continues to pose an unreasonable risk of danger is well-supported.

The Board also considered Petitioner's recent institutional behavior and found under § 2402(c)(6) that he had engaged in misconduct in prison, citing a January 8, 2000, "CDC 115" rules violation for alteration of a computer system.

The Board also considered the opposition of the Alameda County District Attorney's Office and the Hayward Police Department. These agencies were strongly opposed to a grant of parole due to the heinous and atrocious nature of the offense. The statement in opposition was properly considered pursuant to Cal. Penal Code § 3042 and 15 C.C.R. § 2402(b).

The Board also considered the most recent psychological report. Although favorable on its face in that the psychologist found Petitioner posed a relatively low risk of re-offense, the

Board found the report to be contradictory. See Answer, Exhibit 3 at 66. The doctor stated that Petitioner acted out his passive aggressive behavior in the commitment offense and noted that Petitioner still retains those same passive aggressive traits. The Board failed to see how the doctor could come to such an opinion of low risk in light of this finding. The Board also noted that Petitioner's answers to the questions posed were guarded and oftentimes non-responsive in line with the doctor's findings of passive aggressive personality traits. The Board was extremely critical of Petitioner's responses and position. His conduct and the words communicated by himself and his attorney constitute more than "some evidence" from which a credibility determination and substantive decision was made by the Board.

The Board also considered various circumstances demonstrating suitability pursuant to § 2402(d). The Board noted Petitioner had upgraded educationally and vocationally. Id. at 69. It also noted Petitioner's parole plans. Id. at 66-67. While Petitioner appeared to have a place to live and potential employment, the district attorney cast doubt on a letter of support in the file. The individual who had offered Petitioner a place to work did not have a verifiable company. Id. After researching the company, the district attorney could find no listing for the business or the individual in the area. The Board recommended Petitioner provide additional proof in the future to demonstrate he had appropriate parole plans. The Board also noted Petitioner had maintained a relatively disciplinary-free history while in prison, with the exception of two CDC-115 rules violations.

Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh its determination that Petitioner remained an unreasonable risk of danger to society if released. The gravity of Petitioner's offense, his lack of self-help programming, his recent record of negative behavior in prison, the letters of opposition, and his psychological evaluation were more indicative of a danger to the public. In light of these factors, the Board's determination that Petitioner continued to pose an unreasonable risk of danger to the public if released was understandable. This Court cannot conclude that the state court rejection of Petitioner's claim - that the Board's determination was not supported by some evidence - was unreasonable.

1    The Court also finds Petitioner's remaining claims to be without merit. While it is true that in Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation," this is not the situation here. The Board did not rely on just the commitment offense and Petitioner's conduct prior to imprisonment, as discussed above.

Petitioner's challenge to the Board's procedures is also unavailing. It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors in determining Petitioner continued to pose an unreasonable risk to public safety.

The allegation that the Board's two-year denial was arbitrary and capricious must be rejected for the same reasons above. As noted by Respondent, when considering a multiyear deferral, the Board is guided by the same criteria used to determine suitability. See 15 C.C.R. § 2270(d). In this case, the Board considered all of the relevant factors noted above in finding it was not reasonable to expect Petitioner would be suitable for parole in the next two years.

Likewise, his challenge to sentence proportionality is meritless. A criminal sentence that is not proportionate to the crime for which a defendant is convicted may violate the Eighth Amendment. However, no inference of gross disproportionality can be drawn in this case. Petitioner was convicted of murder. His sentence of 15 years to life is not grossly disproportionate to his crime. In addition, the parole board's action of repeatedly denying Petitioner parole does not violate the Eighth Amendment. See United States v. O'Driscoll, 761 F.2d 589, 599 (10th Cir.1985) ("A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and unusual punishment.").

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

III.     Timeliness of Petition

Respondent further argues the petition is time-barred.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).

In this case, the petition was filed on December 8, 2006, and therefore, it is subject to the provisions of the AEDPA. The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In most cases, the limitations period begins running on the date that the petitioner's direct review became final. In a situation such as this where the petitioner is challenging a parole board

decision, the Ninth Circuit has held that direct review is concluded and the statute of limitations commences when the final administrative appeal is denied. See <u>Shelby v. Barlett</u>, 391 F.3d 1061, 1066 (9th Cir.2004) (holding that the Board of Prison Term's denial of an inmate's administrative appeal was the "factual predicate" of the inmate's claim that triggered the commencement of the limitations period); <u>Redd v. McGrath</u>, 343 F.3d 1077, 1079 (9th Cir.2003) (same). Here, the limitations period commenced on September 22, 2004, the day after the Board denied parole. Under Section 2244(d)(1)(D), Petitioner had one year until September 22, 2005, absent applicable tolling, in which to file his federal petition for writ of habeas corpus. Petitioner did not file his federal petition until December 8, 2006, over one year after the limitations period had expired.

   A.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one year limitation period. 28 U.S.C. § 2244(d)(2). In <u>Carey v. Saffold</u>, the Supreme Court held the statute of limitations is tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled during the intervals between one state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was timely, or it was filed within a reasonable time under state law. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005); <u>Evans v. Chavis</u>, 546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. <u>Id</u>.

As stated above, the statute of limitations began to run on September 22, 2004. Petitioner filed his first state habeas petition on December 22, 2004, in the Alameda County Superior Court. <u>See</u> Answer, Exhibit 4. At that point, 91 days of the limitations period had elapsed. Because the petition was properly filed, the statute of limitations was tolled for the time this

14

petition was pending. The petition was denied on January 7, 2005. Id.

Petitioner next filed a state habeas petition in the appellate court on September 29, 2005. Respondent argues that the time period between the denial of the first petition and the filing of the second petition, a period of 265 days, should not be tolled because Petitioner did not timely proceed to the next appellate level. Respondent's argument is persuasive. Pursuant to the Supreme Court's rulings in Saffold and Chavis, Petitioner is entitled to tolling for this interval if Petitioner did not unreasonably delay. Saffold, 536 U.S. at 225; Chavis, 546 U.S. at 197. Here, Petitioner delay of 265 days is clearly unreasonable.

In the absence of "clear direction or explanation" from the state court indicating whether the state petition was timely, the federal court "must itself examine the delay . . . and determine what the state courts would have held in respect to timeliness." Chavis, 546 U.S. at 197. In Chavis, the Supreme Court found a period of six months filing delay to be unreasonable under California law. Id. at 201. The Supreme Court stated, "Six months is far longer than the 'short period[s] of time,' 30 to 60 days, that most States provide for filing an appeal to the state supreme court." Id., *quoting* Saffold, 536 U.S. at 219.  In addition, the Supreme Court provided the following guidance for determining timeliness:

> [T]he Circuit must keep in mind that, in Saffold, we held that timely filings in California (as elsewhere) fell within the federal tolling provision *on the assumption* that California law in this respect did not differ significantly from the laws of other States, i.e., that California's 'reasonable time' standard would not lead to filing delays substantially longer than those in States with determinate timeliness rules.

Chavis, 546 U.S. at 199-200, *citing* Saffold, 536 U.S. at 222-223.

In this case, Petitioner's delay of 265 days is far greater than the short period of time of 30 to 60 days provided by most States for filing an appeal, and the six month delay found unreasonable in Chavis. A delay of nearly nine months, when only 30 or 60 days is normally allotted, is simply excessive.

Therefore, the habeas petition filed in the appellate court was untimely and Petitioner is not entitled to tolling for the interval between the two filings. Thus, with 274 (365-91) days left in the statute of limitations, the limitations period expired on October 9, 2005, during the pendency of the untimely-filed second petition. The instant petition filed on December 8, 2006,

was filed well after the limitations period expired and should be dismissed as untimely.

B. Equitable Tolling

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).

In his opposition, Petitioner contends he should be given tolling for the interval between the first and second state habeas petitions because he was not given notice by the superior court of the denial of the petition. His argument is without merit. Although the superior court denied the petition on January 7, 2005, Petitioner did not inquire on its status until August of 2005. This delay of eight months does not evince diligence. Furthermore, he fails to show that any extraordinary circumstance stood in his way. Therefore, he is not entitled to equitable tolling.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The Petition for Writ of Habeas Corpus be DENIED; and

2. The Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Finding and

1  Recommendation will then be submitted to the District Court for review of the Magistrate
2  Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file
3  objections within the specified time may waive the right to appeal the Order of the District Court.
4  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

  IT IS SO ORDERED.

  Dated:   **April 10, 2008**              /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE